Good morning, Your Honors, and may it please the Court. Colin Reeves, for Appellant Torri Houston, Certified Class in Collective Action. I'll be sharing four minutes of my time with the Department of Labor, and I'd like to reserve three minutes for rebuttal. The central question in this appeal is whether an employer that unfailingly rounds away tens of thousands of net hours worked by thousands of employees year after year for more than six years, and fails to pay employees millions of dollars of earned wages, violates the FLSA. The answer is yes. Under the FLSA, employers must pay employees for all time worked. The rule is no different with the rounding regulation. The plain terms of the regulation make clear that it, too, requires employers to fully pay employees for their time. It simply lets employers take longer to make that payment. Under the regulation, employers can round away a little bit of time one week and underpay employees in that week, and make up that deficit by overpaying employees a little in a future week, provided that over time employees are fully compensated, and I'll quote the regulation here, for all the time they have actually worked. Under any interpretation of the rounding regulation, whether it requires each individual employee to be fully paid, or whether it just requires the class as a whole to be fully paid, and under any view of the relevant period of time to assessing rounding's effects, the undisputed facts in this case show that the employees here were not fully compensated. Does the record reflect why St. Luke's adopted this policy? No, it does not. On summary judgment, the party's just focused on the time records, and the plain language of the regulation and the undisputed facts here show that employees have to be fully paid for their time, and those time records show that they were not fully paid for their time. Two-thirds of employees, year after year, were underpaid in every time period. Yeah, I thought there was something odd about this case. As I understand it, it was a stipulation that any time the employee clocked in, they were actually working. That's right, Your Honor. For purposes of this motion. Yeah, for purposes of this motion. If you prevail, does that mean we're going to be back on another summary judgment motion? That seems to me to be an odd way of litigating it. It seems like all the issues ought to be on the table. What's the purpose of taking that issue off the table? I believe it was because the parties agreed that that would be the most efficient way to litigate the case, would be to put those kinds of questions aside and to just focus on the time records, and those records show that it's undisputed that employees lost. Yeah, it just seems to me that that could be a big issue. We know that anybody who showed up late wasn't working, right? Do we know? I mean, in reality, it seems to me to be a major issue that people who clock in five minutes early, you know, I'm guessing, but I would guess a significant percentage of them are having a coffee and talking with their buddies before they go to work. That could be possible, but here the parties stipulated that is all work time. So that is what is in front of the court here. Well, a follow-up question. If, for example, we would rule in your favor, I was wondering, is that issue going to come back up? In other words, would that be litigated below whether or not they were just having a coffee or whether it was compensable time? I think it's possible that it would be. And if that's the case, this sort of feels a little manufactured of a legal issue that just would sort of crumble or be put to side. I mean, sure, you've got a legal conclusion from the court on it, but it doesn't apply to your case. Well, if the court believes that remand would be appropriate to fully develop the record on that point, it certainly could do that for fuller development of that. But we do believe that the time records here, the facts are what they are, and that they will stay that way on remand, that it will be proven that the employees were working and that everyone will agree to that. I mean, that a jury would have that. Do you think that stipulation will hold? Because that makes a difference in whether we have something that is sort of final and appropriate for us to decide rather than giving sort of almost an advisory opinion type situation. Well, we think that both sides agreed, and the district court judge agreed, that this issue is right for appeal on this record, that the facts are what they are. But we generally don't hear interlocutory appeals. Well, at this point, this is not an interlocutory appeal. This was a final judgment. And the record does, you know, it shows indisputably that employees were not fully paid for their time. And the rounding regulation tells us in no uncertain terms twice in the span of three sentences that employees must be fully paid for all their time. There's really no way around that. If this were to then proceed to trial, how do you determine this period of time? They have to be compensated over a period of time. Right. So I don't think that issue is, or I don't think that's an issue in this case. St. Luke's has never argued otherwise. Well, their position is we've got, you're forcing us to audit daily. No, no, no. I don't think that's their position. I mean, if it is, then it's incorrect, because that is not the position we're taking. Right. We say, just like the regulation says, that what matters is how it averages out over time. Certainly no one would have to do daily audits of that. And even to the idea that there would be some kind of auditing requirement is really, I mean, it's certainly atextual. There is no grounding in the text for that. And there's no reason to think that any kind of administrative convenience would trump the actual clear terms of the regulation, which provide that employees must be paid fully for their time. And I would just add that there's real reason to be skeptical that there would be any kind of difficulty that employers would have to comply with this. And I think St. Luke's is an object lesson of that, because they calculate all the time through an automated payment system. And there's no reason to think that they couldn't just write a little new code and just as easily calculate basically a running tab of how much time the difference is between the rounded time and the actual work time. What is the rounding time doing there, then? If you have a program that clocks the exact number of minutes someone presumably is working for compensable time, what is the rounding regulation doing there? I don't know why employers would use it. I mean, I do think that there would be potentially some good reasons why they would want to continue to use it, even if they do calculate time exactly. And some is because it's easier to then calculate other kinds of things, like various sorts of leave that's been accrued or used based on nice whole round numbers rather than, say, increments of time. So I see that I'm just about to run out of my time. So if there's no more questions, I'll turn the floor over to the Department of Labor. Very well. Thank you. Does this work okay? Yes. Good morning, and may it please the court. Sarah Roberts for the Department of Labor. The Department of Labor's rounding regulation makes it abundantly clear that a rounding policy is only permissible if workers are ultimately paid for all the time that they actually work. And here, the defendant has essentially conceded that there is some amount of work time that the workers work for which they were not paid, and therefore this policy violates the rounding regulation. I'd like to briefly touch on an important conceptual error that was made by the defendants that's also been made by some other courts in rounding cases. Of course, that's only true if you buy the stipulation, right? The stipulation that that time was work time. In this appeal, I think, yes, the court would have to agree with that stipulation. I think I understand the concern about issuing an advisory opinion. However, that would be an issue that would be litigated. At the trial level, it's entirely possible plaintiffs would win and be able to prove that that was work time, particularly because the FLSA has a very expansive definition of what counts as work time. As long as the employer is aware or should have been aware that workers were working, that will be considered work time. It may be considered, but then again, it may come up here again, which is sort of inefficient for this court. Right. Yes, I do. I recognize that. I think my understanding, again, we're amicus, so a bit of a different position, but my understanding is that the parties recognize that this was a key issue in this case, understanding how the rounding regulation applies. They felt that they needed to establish how the rounding regulation applies to this case. This resolution, I'm sorry, resolution of this case in a particular way would simply end it as far as this particular claim, and there would be no need for another review by this court. Isn't that right? Yes, that's my understanding. That's the point, isn't it? I think so. Again, as amicus, I'm not privy to all the calculations that would be made by the parties, so I can't say completely, but that would seem. Well, I mean, if it's true that the record here will not support a conclusion that the policy is not neutrally applied, then that's the end of the case, right? Because it's neutral on its face. Yes. So there wouldn't necessarily be a second appeal on this issue. That's the whole point. They wanted to cut this particular issue out because it might, in fact, lead to a resolution of the claim. Yes, it could. It certainly could, depending on how it plays out in the district court. In the event we affirm. Oh, sorry. I thought I understood Judge Arnold to be referring to a reversal, finding that it was not neutral as applied. Well, under reversal, the issue would go back. Right. And a stipulation dissolves, and then you've got to resolve that issue. If we affirm, it's over. Right. But I do think the parties may well resolve it. Okay. Thank you. Yes. Thank you very much. So I know I have just a little bit of time, but the conceptual error I wanted to mention is the idea of the rounding regulation is that occasionally workers will work a few extra minutes for which they're not paid, but other times workers will be paid for a few minutes that they didn't work. And those two groups of time need to balance each other out over time. However, there is this third category, the neutral category, that the defendants have lumped in with the time benefiting the employees. And that's wrong because that time doesn't benefit the employees any more than the employers. Could I ask? There's some dispute, I think, between the parties on the use of the plural in the regulation. Employees, how do you look at that? I mean, I understand that the focus is on the employee to get paid for all hours that he or she has worked. But this looks like an overall averaging that employees get paid for what they work. What is the department's view on how that is assessed? So the department did not take a position in this case simply because we don't believe it's necessary to reach a decision on that issue to decide this case. However, we do not agree with the defendant's interpretation of the regulation that assigns some significance to the use of the plural employees. We think the plaintiffs are correct that we use the singular and the plural interchangeably throughout our regulations. And the use of the plural is not meant at all to suggest that there's not an individual cause of action available. Very well. All right. Thank you. Thank you, Ms. Roberts. The court will hear from Mr. Pritchard. May it please the court, good morning. My name is Robert Pritchard, counsel for St. Luke's Health System. I'll start by addressing some of the questions the court has already had for my colleagues. First, the question, why did St. Luke's adopt a rounding policy? The answer to that question is not found in this record. I will say, however, that it is common, as even the Department of Labor has recognized for decades, for employers to adopt rounding policies for their timekeeping systems, recognizing that it is an efficient way to avoid nitpicking and to give some employees some flexibility at the beginning and end of their shifts. For an employee who might arrive a few minutes early or a few minutes late, that time rounds to the start time. When they leave a few minutes early or late, same thing. And for decades, employers and the Department of Labor have recognized that that is an acceptable means of providing some flexibility to both employees and employers at the fringes of the day. But the second question, the one that seems to be top of mind here, is about the stipulation. At the district court, the party stipulated to two things. First, the plaintiffs stipulated that it does not matter why an employee might have clocked in early or late or clocked out early or late. That the reason itself is not relevant, which distinguishes this case from cases like Aguilar, in which the Tenth Circuit recognized that the employer was actually using rounding as a subterfuge to avoid paying employees for a pre-shift briefing, in which that employer allegedly had the employees clock in, attend a meeting, but then all of that meeting time was rounded away. That's why there was over, I think, 94 percent of the rounds went against the employees in that case. Here, however, the plaintiffs stipulated that it doesn't matter why an employee might have chosen to come in early or late or leave a little bit early or late. In other words, there's no evidence in this record of any motive by the employer to use its rounding policy as a subterfuge to avoid paying for all hours worked. The flip side of that stipulation is that the defendant stipulated, for purposes of summary judgment only, that all on-the-clock time was hours worked. And we all know the practical realities of time clock placement in a large facility, like a St. Luke's facility, where the employee clocks in, walks down the hall, maybe gets a cup of coffee, uses the restroom, socializes, and at the end of the day packs up their personal belongings after work, walks to the time clock, and clocks out. If this case is remanded, there will be significant dispute around what the employees are doing right after they clocked in and right before they clocked out. And I am confident that on remand, if that's the course taken here, that it will be easy to demonstrate that there's more than 38 seconds, the total amount of time on average in dispute in this case, that was not considered work time under the FLSA or state law. Having said that, this is the stipulation that the parties agreed to for this purpose. And it's important here, and the court is not being asked to issue an advisory opinion, because the record in this case is that it doesn't matter why employees clocked in or out a little bit early or a little bit late, and all of that time is work time. The plaintiff chose, in the prosecution of their case, to accept both stipulations for purposes of developing a record and testing their theory at summary judgment. And the summary judgment standard is simply, on the record, Is there enough evidence from which a finder of fact could conclude that the policy is unlawful? Let me ask you, are you challenging in any way the regulation? First of all, it's not a notice and comment rulemaking regulation. This is a regulatory guidance promulgated by the Department of Labor back in the 1950s, recognizing... Let me ask it this way. I didn't see anything in your briefs that amounts to a challenge to the regulation. Oh, no. As a matter, this has been the longstanding view of the Department of Labor as expressed in... Okay, so you're not challenging the regulation. Correct. Okay. That having been said, it looks to me, no matter how you slice and dice it, your expert, their expert, the employees get shortchanged in almost any way you slice and dice it. Well, over a third of the employees actually were overpaid over the entire course of time. On average, we're talking about a 38-second average negative impact. But the regulation states a couple of different things that are really important here and support St. Luke's position in this case. First, time clocks aren't required. If the employer had just used paper timesheets and employees had written 9 to 5, 9 to 5, 9 to 5, even though we know that that call went till 5.02 or the employee got in at 9.03 and the employer accepted the paper timesheets, the Department of Labor's enforcement position is that that sort of thing is okay and it's tolerated. Second, the regulation states that minor differences between time clock records and actual hours worked can't ordinarily be avoided, but that major discrepancies should be discouraged. So if we look at the regulation in its entirety, it acknowledges that minor differences are acceptable and tolerable to the Department of Labor and have been for decades. Third, the Department of Labor recognizes that there has been a practice for many years of rounding. This is in the 1950s and it's continued unchanged since then. Next, the regulation states, quote, presumably this arrangement averages out and that for enforcement purposes, rounding practices will be accepted, provided that it is used in a manner that won't result over a period of time in the failure to compensate employees. So this is really critical. There's two points I'd like to make here. First, it's a question of how the rounding practice is used. If the employer, as in the case of Aguilar, called a pre-shift meeting every day at 5 to 9, had their employees clock in for the briefing, but then rounded away those five minutes of meeting work time, that would be a rounding practice that is used in an impermissible manner. Here, there is no evidence in the summary judgment record that St. Luke's used the policy in an improper way. Well, it doesn't say that. It says in such a manner that it will not result. That doesn't look to me like an inquiry into St. Luke's motives. It looks to me like an inquiry into what happened, what's the actual result. And I come back to no matter how you slice and dice it, the employees can have the short stick. Overall, the employees get the short stick. And over a third of the employees got more. And even of the employees who lost over time, there's no evidence in this case as to why they got the short stick. There's no evidence in this case that the employer had them come in earlier. But it doesn't say inquire as to the intent. It says what's the result. The phrase right before the question about result is about how the policy is used. And when we see cases like Aguilar, that's what it's talking about. How did the employer in Aguilar use rounding? More importantly, the sentence before that is that presumably the arrangement averages out. Now, plaintiffs, and for the first time ever, the Department of Labor is amicus, are saying that that is some rebuttable presumption that just says let's look at the data. And if the data shows that it tilts the opposite direction, then the rounding practice is unlawful. That's not what I'm saying. Counsel, I'm sorry to interrupt, but the audio, can you hear me? Can you hear me? I'm sorry, the audio. I'm having difficulty with the audio. Can you hear me okay? Yes, Your Honor. Okay, thank you. As I understand it, the question here is whether on this record there's sufficient reason to conclude that there is an inference that is raised that this policy is not being applied in a neutral way. And that the way the plaintiffs are trying to show this is, is to show that there's a significant or rather lopsided result in this case, which undermines the rights of the employees to their pay. So is that essentially the question? That is the question. Here, of course, there is. So why isn't there, I think this is Judge Grunder's point, why isn't it true here that there's a significant difference between the number of employees who are benefited and the number of employees that are not? Why isn't that enough to raise the inference that this policy is not being neutrally applied? Well, first, more employees actually benefited or at least had no impact than were negatively impacted. That's another thing. No impact, I don't understand why that counts. Okay, congratulations. Everything is okay with respect to that, but we're talking about the generality of the loss, right? The issue is whether the rounding policy is neutral as applied. If that is an invitation, and then the Ninth Circuit has stated in Corbyn that this is not an invitation to perpetually audit, as Judge Kelly pointed out, to perpetually audit every day to make sure that over some unspecified look-back period that the needle didn't just tilt one second on average against the employees. If an employer has to do that, then it would eliminate rounding altogether and just pay to the punch. And that would completely undermine what the Department of Labor has recognized for decades and decades as being reasonable and efficient. But doesn't that overlook the over a period of time? If you're to audit a day here, a day there, that's kind of also the point of rounding, right? That you don't have to do that, but it has to round out over time. When I say daily auditing, I mean every day we would need to look back over a period of time to see what impact yesterday had on the overall period of time across some, again, unspecified look-back period. Every day we would have to look. We're at 38 seconds. Maybe over the next couple of weeks, employees will all come in a few minutes late and punch in and benefit. And then the needle will tilt towards zero again. And then suddenly St. Luke's policy would be deemed lawful because over a new period of time, it's now back. But in your description there, you're looking at it one moment by one moment by one moment. And I just don't think that's what the regulation is saying. What I'm saying is you have to continuously look back. But every day that happens creates a new day of data that would have to be added to the analysis. So today I'd have to look back and see what's the impact over, again, an unspecified. The plaintiffs are asking this court to set a legal standard. That includes, from their view, what is the period of time that one must look back over? In this case, we used a statutory period, but that's not a practice that can guide employers. So here, in the future, St. Luke's, in a month from now, could look back over some other period of time and see that over that period of time, rounding actually benefited the employees. The question before the court is whether there's anything in this particular record where more than a third of the employees benefited overall from time, where over one half of the shifts rounded in favor of the employees across all employees, where even the employees who lost time in the aggregate had days, many days, over 20 percent of their days, when they actually gained time. The plaintiff's view in this case is that on that record alone, if that was presented to the jury, the jury could find that St. Luke's policy was not neutral in application. But here, in fact, the policy is neutral in application, as case courts like Boone found, where it doesn't really matter. The employer is not influencing how the employees use the time. So your argument really comes back to your conversation with Judge Grender about the intent of the employer. Your argument really focuses on how the employer uses the policy, not the result. How the employer uses the policy overall, in connection with other facts. So if we were to disagree and say, well, you've read out the word result, is that sort of the end of it then? No. We'd have to look at what the actual result here is. And the result for the employees at St. Luke's is that almost 40 percent of them benefited from the policy. So we're going to tell them that they were unlawfully overpaid? There's nothing in the way. What happens to the ones that were underpaid? They could punch in at five minutes after and get five more minutes of pay tomorrow. That's a neutral rounding policy that allows employees to clock in any time between 6 till and 6 after, with no adverse consequence to their choice and no evidence that the employer was influencing that choice in any way. That employee is the master of their own result. Even if it results in a failure to compensate that subset of employees for all of the hours they worked. Even if that's the result. Correct. Because it was not used in a way, the policy was not used by the employer. And I'd like to use some other examples. The Department of Labor interpretive guidance on overtime is replete with examples in which the agency has long taken the position that as long as the employer adopts a reasonable method of calculating time worked, calculating overtime, that is not a subterfuge to avoid, intent, that is not a subterfuge to avoid paying for all hours worked at the appropriate rate, then the agency will accept reasonable approaches. Well, what if in this type of example, St. Louis has no intent of having a result that undercompensates people. But as a matter of fact, 99.5% of employees based on their rounding policy are undercompensated. They didn't know that. I mean, they didn't intend that. Is that a violation? Happily, that's not my facts. But the question, I think it's fair to say that the court can look at data when presented with the data to see what influence it has. For example, in a retaliation case, the court can look at the temporal proximity between the protected activity and the employment termination to see does that create a hint or a suggestion of an improper motive. But the court will also look at other evidence to see what actually motivated. There's not a moment where it just tilts and the employee must pay. Well, what if we say we understand St. Luke's did not intend this, but that's the result. St. Luke's did not intend this, and employees of their own free will, with no evidence of any indication that St. Luke's influenced this in any way, chose when to clock in and clock out. And that choice influenced how they were paid. Just like an employee who fills out a paper time sheet and writes 9 to 5 when it was really 8.57 to 5.02. They made that choice. They could have written 5.02 without consequence, but they wrote 5. And employers have long accepted this. The agency has long accepted this. And things like how to calculate overtime using weighted average or rating effect, how to calculate overtime when two different rates are worked, how to calculate overtime on commissions and bonuses, the Department of Labor's regulations always say it's fine for the employer to choose a reasonable policy as long as there's no intent to avoid paying for all hours worked. Intent matters, and it's in the regulation itself with the word used. Thank you, Mr. Pritchard. The court appreciates all counsel's appearance today and argument. The case is submitted and we'll issue an opinion. Oh, I'm sorry. You got rebuttal. My mistake. Sorry. So I'd like to focus first on this question of intent. And the reason under the FLSA, Mr. Pritchard focused on a retaliation claim. Clearly intent does matter in a retaliation claim. There is no intent that is required to be shown in any kind of wage and hour claim. The intent can come in to decide whether the limitations period is two years or three years. That's the only time intent matters. All an employee needs to show is that the employee worked overtime or wasn't paid minimum wage, and that just wasn't paid. That's the only way intent comes in. Let me ask it this way. I think the phrase neutral application has been kicked around a little bit. Does that mean that the – and if you've got any cases or anything that would be helpful, I'd appreciate it. But does that mean that the employer sort of blindly applies it without any intent, or does that mean the result has to be neutral in the sense that it averages out? So there's two issues with the way courts have looked at rounding policies. So the first one has to do with whether the policy is facially neutral, and that's where intent would come in. Potentially it would come in if it only rounds one way, only in the employer's favor. And if I can interrupt for just a second. You concede it's facially neutral. For purposes of the appeal, sure, yeah. So I think there could be some dispute on that because the way whether – so strictly it's facially neutral because it rounds both ways. But some courts have looked at, and I think it's appropriate to look at, whether rounding policies in conjunction with other kinds of policies, like disciplinary policies, that those kinds of things can make them facially unneutral. But on the neutral and application prong of things, when courts look at that, courts look exclusively at the results. The intent does not matter, and courts are completely clear about that. You asked for a couple of sites. Two that we noted in our briefs are the Feltz's case and Bebber. And those ones, just look at the data. And there the data just showed that employees as a whole were underpaid over time, even though those were facially neutral policies. Counsel, isn't it possible that – I'm sorry, I'm having audio problems here. I can hear you, Your Honor. All right. Isn't it true that it could be that the policy was being applied in a non-neutral way, not because of the employer's desire not to live up to its obligation, but because some other policy of the employer was causing that, or because there might be some glitch in the system? Neither one of those possibilities involves an intentional act on the part of the employer to shortchange the employee. Isn't that correct? Well, I guess it would, on the first point, about that there could be other policies that would kind of in conjunction work to – Yeah, not intended to shortchange, but having that effect. Sure, but of course they could. An employer could take two policies knowing the way they would interact with each other. But again, it is not necessary for this case. Everyone agrees, and St. Luke's concedes, that the ultimate facts matter. The ultimate results matter. And on any reading of the regulation, the plain terms of the regulation tell us that employees have to break even over time. And on any way, as you said, Judge Grunder, any way you slice it, that just did not happen here. Thank you. Having given you your rebuttal, the case is now submitted, and we appreciate your appearance and argument. Thank you, counsel.